NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| RICHARD A. DUNNE, | ) | |
| | ) | Hon. Garrett E. Brown, Jr. |
| Plaintiff, | ) | |
| | ) | Civil No. 08-5605 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TOWNSHIP OF SPRINGFIELD, | ) | |
| SPRINGFIELD TOWNSHIP POLICE | ) | |
| DEPARTMENT, OFFICER KEVIN | ) | |
| GILCHRIST, JOHN DOES I-X, and | ) | |
| ABC I-X, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for summary judgment (Doc. No. 31) of Defendants Township of Springfield, Springfield Township Police Department, and Officer Kevin Gilchrist (collectively "Defendants"). Plaintiff opposes the motion. The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Defendants' motion.

## I.     BACKGROUND

This matter involves whether Defendant Gilchrist engaged in malicious use or abuse of process when he issued two traffic citations to Plaintiff after a traffic encounter. Plaintiff filed the instant civil rights action *pro se* alleging violations of his First, Fourth, and Fourteenth

1

Amendment rights pursuant to 42 U.S.C. §§ 1981(a), 1981(c), and 1983, and also alleging violations of the New Jersey Civil Rights Act of 2004, N.J.S.A. § 10:6-2.  (Am. Compl. ¶ 17; Doc. No. 10.)

It is undisputed that on or about November 17, 2006, Plaintiff was operating a vehicle and "was stopped in traffic on Mountain Avenue in Springfield, [New Jersey]" outside of a special education elementary school around the time of school dismissal; Defendant Gilchrist was there to direct traffic.  (Defs.' 56.1 Stmt. ¶¶ 3–5; Doc. No. 16-2; Pl.'s 56.1 Stmt. ¶¶ 3–5; Doc. No. 19.)  Plaintiff used his vehicle's horn to get Defendant Gilchrist's attention.  (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1 Stmt. ¶ 6.)  As traffic eased, Plaintiff proceeded down the street and said something to Defendant Gilchrist as he drove past, although the content of this exchange is disputed.  (Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Stmt. ¶ 7.)  Plaintiff asserts that he told Defendant Gilchrist that his actions were "not very smart," and Defendant Gilchrist maintains that Plaintiff cursed at him.  (Defs.' 56.1 Stmt. ¶ 8; Pl.'s 56.1 Stmt. ¶ 8.)  Approximately three days later, Defendant Gilchrist mailed two summonses to Plaintiff, one for careless driving and one for improper use of horn.  (Defs.' 56.1 Stmt. ¶¶ 9–11; Pl.'s 56.1 Stmt. ¶ 9–11.)  The Honorable Donald Bogosian, J.M.C. of the New Providence Municipal Court, entered a finding of not guilty with respect to the careless driving charge and guilty with respect to the improper use of horn charge.  (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Stmt. ¶ 13; Second Am. Compl. Ex. A at 47–48.)  On appeal, the Honorable Walter R. Barisonek, J.S.C. of the Superior Court of New Jersey, Law Division, Union County, reversed the guilty finding with respect to the improper use of horn charge and found Plaintiff not guilty.  (Second Am. Compl. Ex. B at 20–22.)

Plaintiff filed the instant Complaint on November 13, 2008 (Doc. No. 1), and an

Amended Complaint on  June 10, 2009 (Doc. No. 10), alleging malicious use and abuse of

process.  By Opinion and Order of June 25, 2010, this Court *sua sponte* dismissed the Amended

Complaint for failure to state a claim, and the Court permitted Plaintiff to file a Second Amended

Complaint, which Plaintiff did on July 16, 2010.  Plaintiff demands compensatory, general,

special, economic, and punitive damages, as well as reasonable attorney's fees and costs.

(Second Am. Compl. Prayer for Relief.)  Defendants filed this motion for summary judgment on

August 9, 2010 (Doc. No. 31), which Plaintiff opposes.  This matter was reassigned to this Court

on June 14, 2010.

## II.    DISCUSSION

### A.    Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV.

P.  56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax

Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209,

1219, n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Hersh v. Allen Prods. Co.*, 789 F.2d

230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no

issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view

the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennsylvania Coal*

*Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  *Anderson*, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  *See Celotex*, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," *id.* at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citations omitted); *see also Anderson*, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

4

fact").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson*, 477 U.S. at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) (stating that "[t]o raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.) (citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" *Id.* at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." *Id.* (citation omitted).

Plaintiff alleges violations of his First, Fourth, and Fourteenth Amendment rights, in addition to violations of his state constitutional rights. Although the contours of Plaintiff's

5

separate claims remains unclear, Plaintiff appears to bring these claims under 42 U.S.C. § 1983

and 42 U.S.C. § 1981(a), (c), and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2.

Defendants challenge the evidentiary support for each, and the Court considers each in turn.

**B.  42 U.S.C. § 1983**

With § 1983, Congress provided a federal forum for individuals to file actions for

deprivations of their civil rights.  This Section states:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983.  In order to state a claim for relief under § 1983, a plaintiff must allege, first,

the violation of a right secured by the Constitution or laws of the United States and, second, that

the alleged deprivation was committed or caused by a person acting under color of state law.

*Baker v. McCollan*, 443 U.S. 137, 140 (1979); *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Piecknick*

*v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).  Defendants argue that Plaintiff has not

substantiated his claims of a constitutional violation, that Officer Gilchrist's actions are shielded

by qualified immunity, and that, even if Plaintiff had shown a constitutional violation, municipal

liability cannot attach to the Township of Springfield and Springfield Police Department, because

Plaintiff has not shown that the Township enforced an official policy or custom that caused the

constitutional tort.  The Court agrees with each point.

6

### 1. Constitutional Violation

Although Plaintiff avers unspecified violations of his Fourth and Fourteenth Amendment rights in passing (*see* Second Am. Compl. ¶¶ 54, 58), the primary thrust of Plaintiff's Complaint is that Officer Gilchrist abused his authority by issuing the traffic summonses in retaliation for Plaintiff's conduct and statements to the officer during their November 17, 2006 encounter. Although "[t]he prosecution of traffic offenses is regarded as quasi-criminal" in nature, New Jersey courts have treated this type of claim under the civil standards for malicious use of process and malicious abuse of process, as opposed to the criminal standard for malicious prosecution. *See, e.g.*, *Vickey v. Nessler*, 230 N.J. Super. 141, 148–49 (App. Div. 1989).

In assessing § 1983 claims for malicious use and abuse of process, which are effectively claims arising under due process, *see Voytko v. Ramada Inn of Atlantic City*, 445 F. Supp. 315, 323 (D.N.J. 1978), courts have found guidance from state court decisions that have developed these doctrines, *see, e.g.*, *Jennings v. Shuman*, 567 F.2d 1213, 1216–19 (3d Cir. 1977) (finding guidance from Pennsylvania decisions).  New Jersey courts have "treated" these claims "with great caution because of their capacity to chill resort to our courts by persons who believe that they have a criminal complaint or a civil complaint against another."  *LoBiondo v. Schwartz*, 199 N.J. 62, 89–90 (2009) (citations omitted).  The Court considers each claim in turn.

### a. Malicious Use of Process

"To sustain a claim for malicious use of process pursuant to § 1983, the following elements must be shown: (1) an action was instituted by the defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; (4) the action was terminated favorably to plaintiff; and (5) the plaintiff has suffered a special

grievance." *LoBiondo*, 199 N.J. at 90.  While the first four elements mirror the elements of a

malicious prosecution claim, New Jersey courts require a special grievance for malicious use of

process claims because of the inherently less injurious nature of civil proceedings.

> The added special grievance requirement reflects the significantly
> different implications that flow from being sued in a civil matter as
> compared to being prosecuted on a criminal charge.  That is to say, the
> special grievance is designed to take the place of the injurious effects,
> including arrest, restraint, or the attendant humiliation of being held on
> bail, finger-printed, and photographed, that ordinarily flow from a
> wrongfully instituted criminal charge.  Because in contrast, the minimal
> impact of the commencement of civil litigation is insufficient on its own
> to demonstrate an injury, the civil remedy of malicious use of process
> demands the additional showing of a special grievance.

*LoBiondo*, 199 N.J. at 90 (citing *Vickey*, 230 N.J. Super. at 148–49).  Defendants argue that this

claim must fail against Defendant Gilchrist because Plaintiff cannot demonstrate malice, a lack

of probable cause, or a special grievance.  The Court agrees.

For purposes of a malicious use of process claim, courts have described malice as

"intentional doing of a wrongful act without just cause or excuse."  *E.g.*, *LoBiondo*, 199 N.J. at

93–94 (citations omitted).  Malice may be "inferred from a finding that a defendant has neither

probable cause nor a reasonable belief in probable cause."  *Id.* at 94.  Yet, the favorable

termination of a prior suit, alone, will not establish malice.  *Id.*

Here, although the Superior Court reversed the municipal court's guilty finding on the

improper use of the horn charge, the record does not permit a reasonable inference that Officer

Gilchrist acted with malice.  Plaintiff concedes that, while Officer Gilchrist was conducting

traffic in front of an elementary school, Officer Gilchrist stopped to have a discussion with

another motorist, traffic backed up, Plaintiff honked his horn twice at the officer, and after traffic

flow resumed, Plaintiff looked out his window and made a condescending statement to the officer.[1]  Although the Superior Court ultimately found Officer Gilchrist's decision to issue the summonses unwarranted, this Court—now the third to examine this incident—cannot say that a reasonable official in Officer Gilchrist's shoes would not have reason to believe that probable cause existed to issue a careless driving or improper use of the horn summons under the circumstances.  This Court's conclusion is supported by the fact that one of the two courts that previously reviewed this matter concluded, as a matter of law, that there was sufficient evidence to find Plaintiff guilty for improper usage of the horn.  Moreover, the decision of the municipal court, which routinely adjudicates this sort of traffic violation, is not patently unreasonable.  The pertinent traffic statute, N.J. Stat. Ann. § 39:3-69, provides that "[t]he driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn but shall not otherwise use such horn when upon a highway."  For the municipal court, there was not only probable cause, but adequate proof that Plaintiff's use of the horn was not "reasonably necessary to insure safe operation."  (Second Am. Compl. Ex. A at 48 (finding beyond a reasonable doubt that Plaintiff used a horn "when it was not necessary to be used and it was used solely for the purpose of getting the police officer to let [Plaintiff] move forward").)

Plaintiff makes much of the following testimony that Officer Gilchrist gave before the municipal court:

> I finished giving directions as best as I could to the car in the southbound lane.  I proceeded to let the cars go northbound.  I stepped onto the

---

[1] For purposes of this motion, the Court construes the disputed facts of the exchange in Plaintiff's favor, and presumes that Plaintiff did not curse at the officer.  The Court also accepts Plaintiff's claim that Officer Gilchrist was "not actually performing his assigned responsibility to direct traffic" when the encounter occurred.  (*See* Pl.'s 56.1 Statement ¶ 5.)

> western curb of Mountain Ave which would be the passenger side of the cars going southbound, proceeded to let the southbound cars go.  As the car Mr. Dunne was operating drove by me, the passenger window was down.  He looked out at me, not paying attention to what was going on in front of him and yelled out, and I'm going to quote, "you fucking asshole."
>
> That's what I believe I heard and that was it.  I noticed the plate, I committed the plate to memory and when I got back in my car I ran the plate, it came back to the car that the individual was driving and it matched the description of the individual[] driving.

(Second Amended Compl. Ex. A at 9:6–21.)  Plaintiff argues that this testimony conclusively reveals a malicious purpose.  The Court disagrees.  This testimony does not contradict the fact that Plaintiff honked his horn at the officer—a fact Plaintiff concedes—and it suggests that Plaintiff made a condescending statement to the officer as he drove by without looking where he was going.  While one can infer from this statement that the nature of Plaintiff's statement influenced the officer's decision to issue the summonses, one cannot divorce the substance of Plaintiff's statement from the context in which it was made—by a driver, following two horn honks, on a busy street, in front of a school, to an officer positioned there to direct traffic.  These circumstantial facts, the municipal court concluded, established not only probable cause, but guilt under the improper-use-of-horn statute.  While the Superior Court reversed the guilty finding, it did not make a finding that probable cause was lacking.  Without drawing any adverse conclusion regarding the nature of Plaintiff's comment or his motives for honking the horn, this Court concludes that a reasonable officer in Officer Gilchrist's position would have reason to believe that probable cause supported the issuance of the summonses.  *See LoBiondo*, 199 N.J. at 93 (defining probable cause in terms of an objective analysis of whether "the facts supported the actor's 'honest belief' in the allegations," and explaining that "[i]n this context, honest belief

10

means, using the reasonable prudent person standard, a reasonable belief that there was a good or sound chance of establishing the claim to the satisfaction of the court or the jury") (citations omitted).

Plaintiff also appears to argue that the fact that Officer Gilchrist issued a careless driving summons, which the municipal court summarily disposed of, supports an inference of malice. The Court disagrees.  The Court notes that the careless driving statute sets a rather broad definition of careless driving: "A person who drives a vehicle carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving."  N.J. Stat. Ann. § 39:4-97.  Although the careless driving summons, under these circumstances, appears to have been duplicative of the improper-use-of-horn summons, the Court cannot say that a reasonable officer in Defendant's position would have lacked probable cause to issue a careless driving summons.  Ultimately, while the record and court rulings may be read as indicating that Officer Gilchrist might have misjudged the situation, it, it does not support the conclusion that he acted in bad faith, without probable cause, or with malice.  Consequently, Plaintiff's malicious use of process claim fails as a matter of law.

The Court also finds that Plaintiff has not shown a special grievance.  The parties' arguments reveal a split of authority on this issue.  The New Jersey state courts have followed a "reality" test that inquires "'what happened to the defendant in the prior prosecution' of the quasi-criminal action."  *Klesh v. Coddington*, 295 N.J. Super. 1, 4 (App. Div. 1996) (citing *Vickey*, 230 N.J. Super. at 149–50).  The New Jersey Supreme Court has recognized that "the mere cost of defending against litigation" does not establish a special grievance, but rather, the

11

touchstone is "interference with one's liberty or property." *LoBiondo*, 199 N.J. at 95 (citations omitted). Courts have applied this principal to cases involving malicious use of process claims premised on traffic citations. In *Vickey v. Nessler*, a motorcyclist brought malicious prosecution and § 1983 claims against state troopers following the dismissal of his traffic citation by the Trenton Municipal Court. *See Vickey*, 230 N.J. Super. at 144. Previously, the parties had been in an accident at an intersection, and after the officer had filed a complaint against the plaintiff for running the traffic light, the plaintiff had responded by issuing a countercomplaint against the officer for the same violation. *See id.* The Law Division dismissed the malicious prosecution claims, and the Appellate Division affirmed, finding (1) that the malicious prosecution claims were more properly considered malicious use of process claims, and (2) that the plaintiff had not presented evidence of a special grievance where the plaintiff "was not arrested and there was no deprivation of any property right." *Id.* at 149. The *Vickey* court expressly rejected the plaintiff's argument that the traffic citations established a special grievance because the failure to contest such citations could result in a 15-day sentence and increased violation points on his license. *Id.* at 149–50 ("[T]he litmus test is what happened to the defendant in the prior prosecution of the traffic offense and not what could have happened.").

Plaintiff draws this Court's attention to *Harmon v. Holmes*, wherein a court in this District determined that, notwithstanding *Vickey*, the potential for incarceration and driver's license violation points attendant to a traffic citation caused sufficient injury to bring a federal claim under § 1983. *Harmon*, 712 F. Supp. 451, 453–54 (D.N.J. 1989). Like *Vickey*, *Harmon* involved a traffic accident between a citizen and a police officer, but in *Harmon*, the plaintiff alleged that the officer only filed a complaint against her—for failure to report an accident—*after*

she had filed a complaint against the officer.  *See id.* at 452–53.

The Court notes that neither *Vickey* nor *Harmon* is binding on this Court.  Faced with these competing precedents, at least one court in this District has followed the rule set forth in *Vickey*.  In *Bergen v. Gervasi*, a case presenting a similar § 1983 claim against a police officer for issuing a careless driving citation that the municipal court subsequently found unsubstantiated,[2] then United States Magistrate Judge and now District Judge Joel A. Pisano ruled that the "reality" test of *Vickey* applied, and that Plaintiff had not presented evidence of a special grievance because "she was never arrested, jailed, or otherwise deprived of her liberty or property."  Civ. No. 98-1475, 1998 U.S. Dist. LEXIS 20755, at *11 (D.N.J. Nov. 23, 1998) (submitted for magistrate jurisdiction pursuant to 28 U.S.C. § 636(c)).  In response to the plaintiff's argument that *Harmon*'s "potentiality" test should apply, the *Bergen* court disagreed, noting that "[p]otential future liability might have a chilling effect on honest litigants," and explaining that "litigation must end somewhere; indeed, if one counter-action may be filed, so may another, and another."  *Id.* at *12–13 (citing *Penwag Property Co. v. Landau*, 76 N.J. 595, 597–98 (1978); W. Page Keeton et al., Prosser and Keeton on Torts § 120, at 889 (5th ed. 1984)).  The *Bergen* court also recognized the beneficial certainty that resulted from the "reality" test; "[i]f [the plaintiff] has endured a quasi-criminal proceeding and escaped unscathed, he should not be free to file suit seeking redress, as he has no real damages."  *Id.* at *13.  This Court agrees with the *Bergen* court that *Vickey* presents the best approach to forestalling needless retaliatory

---

[2]The plaintiff in *Bergen* had alleged that the officer issued the summons shortly after the plaintiff's brother had made a comment about the officers to his attorney.  At the time, the brother and attorney were in plaintiff's stationary car.  The court's discussion of the allegations suggests that the officer was "within earshot of plaintiff's stationary car" at the time of the comment.  *See Bergen*, 1998 U.S. Dist. LEXIS 20755, at *2.

13

litigation, while at the same time providing recourse to those who suffer cognizable injuries, and certainty for litigants.

The Court also notes that, unlike *Harmon*, which was decided at the motion to dismiss stage before the plaintiff had access to discovery, the instant matter is before the Court on a renewed motion for summary judgment, and Plaintiff has had ample access to discovery and two opportunities to identify his special grievance. Despite these opportunities, Plaintiff has not specifically identified what his injury was. Plaintiff has not presented evidence, let alone alleged, that he suffered monetary costs, or some other deprivation of his property, as a result of the traffic citation litigation. Indeed, the record reflects that the Superior Court, on appeal, reversed his conviction. In opposing Defendants' special grievance argument, Plaintiff only argues that the issuance of the summons infringed upon his liberty interest in free speech under the First Amendment. (*See* Pl.'s Br. at 13.) Yet beyond this conclusory assertion, Plaintiff does not demonstrate how his free speech rights were infringed by the officer. The undisputed record reflects that Officer Gilchrist issued the summonses after the encounter, and that Plaintiff successfully defended against them in municipal and Superior Court. The Court fails to see how two driving citations issued *after* a traffic encounter, and the summary litigation process of traffic citations in municipal court, could have an appreciable and measurable chilling effect on Plaintiff's exercise of free speech. Plaintiff makes no effort to fill in this pleading and evidentiary gap, and this Court concludes that Plaintiff has not shown a special grievance.

Because Plaintiff has not presented evidence creating a genuine issue of fact regarding malice, lack of probable cause, or a special grievance, the Court will grant Defendants' motion on this claim.

### b.  Malicious Abuse of Process

Plaintiff also alleges malicious abuse of process, which presents a distinct cause of action from malicious use of process.  "A [S]ection 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings*, 567 F.2d at 1217).  "Thus . . . the distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law." *Tedards v. Auty*, 232 N.J. Super. 541, 549 (App. Div. 1989) (quoting *Ash v. Cohn*, 119 N.J.L. 54, 58 (E. & A. 1937)); *see also* Restatement (Second) of Torts § 682 ("One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.").  To establish a claim for malicious abuse of process, a plaintiff must show "(1) the defendant has set legal process in motion for an improper ulterior purpose, and (2) the defendant has committed a willful act in the use of process which perverts the regular conduct of the proceeding to accomplish the improper purpose." *Voytko*, 445 F. Supp. at 325.  "[B]asic to the tort of malicious abuse of process is the requirement that the defendant perform 'further acts' after issuance of process 'which represent the perversion or abuse of the legitimate purposes of that process.'" *Baglini v. Lauletta*, 338 N.J. Super. 282, 294 (App. Div. 2001) (citation omitted).

Defendants argue that Plaintiff has not shown evidence that Officer Gilchrist commenced the traffic litigation for an ulterior motive, and that Plaintiff has not shown evidence of "further

acts" that perverted the legal process.  The Court agrees.  As noted above, Plaintiff argues that Officer Gilchrist's testimony before the municipal court reflects that the officer had a malicious, retaliatory purpose in issuing the summonses and proceeding with the traffic citation litigation. However, as the Court explained *supra*, Officer Gilchrist's testimony does not contradict the assertion that Plaintiff honked his horn at the officer or that Plaintiff made a condescending statement to the officer as he drove by without looking where he was going.  While one can infer from this testimony that Plaintiff's statement influenced the officer's decision to issue the summonses, one cannot separate the substance of Plaintiff's statement from the traffic context in which it was made.  Under the circumstances of this case, this Court decided that a reasonable officer in Defendant's position would have reason to believe that probable cause supported the issuance of the summonses.  *See* Restatement (Second) of Torts § 682 cmt. b (explaining that "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant").  Yet the more fundamental problem with this argument, as Plaintiff employs it to support his malicious abuse of process claim, is that it focuses on Defendant's intentions in issuing the process in the first place.  "The gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  Restatement (Second) of Torts § 682 cmt. a. There can be no doubt that, once Officer Gilchrist issued the summonses, whether that initial decision was proper or improper, the prosecution of those citations was a proper use of the legal process.

Plaintiff also argues that Officer Gilchrist perjured himself in his testimony to the municipal court by embellishing his account of the derogatory remark Plaintiff made during the encounter.  The Court is not persuaded that an officer's testimony about what he *believed* he heard during a traffic encounter constitutes "further acts" that would support a malicious abuse of process claim.  In *Briscoe v. LaHue*, the Supreme Court recognized that witnesses in judicial proceedings enjoy absolute immunity from civil liability arising from their testimony.  460 U.S. 325, 330–34 (1983); *see also infra* Part II(A)(3) (discussing a witness's absolute immunity under § 1983).  The *Briscoe* Court explained that this immunity derived from longstanding traditions in English and American common law.  460 U.S. at 330–34.  Plaintiff presents no authority for the proposition that a witness's testimony can constitute further acts in the abuse of process.  Nor does Plaintiff suggest that Officer Gilchrist performed other "further acts" that constituted an abuse of process.  In light of *Briscoe* and the historical development of the immunity discussed therein, the Court finds that Plaintiff has not shown "further acts."

Because Plaintiff has not established a predominant ulterior motive or further acts, the Court will grant Defendants' motion on this claim.

### 2.  Unspecified Constitutional Violations

Defendants also move for judgment on Plaintiff's unspecified constitutional claims (see Second Am. Compl. ¶¶ 54, 58 (invoking, *inter alia*, due process, equal protection, Fourth, and Fourteenth Amendment rights), arguing that Plaintiff has not identified how his rights were infringed for such claims.  Plaintiff does not respond to these arguments, and does not identify how Defendants deprived him of due process, equal protection, or other constitutional rights. Indeed, the record reflects that Plaintiff had a fair opportunity to defend against the citations

17

issued by Officer Gilchrist, and that Plaintiff ultimately prevailed on appeal.  Plaintiff does not suggest that this legal process was in any way deficient.  *Cf. Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (explaining that the procedural due process inquiry entails "consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail").  Plaintiff does not suggest that he was arbitrarily singled out for disparate treatment from others similarly situated.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing that equal protection claims may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").  Furthermore, viewing the undisputed facts in the light most favorable to Plaintiff, the Court cannot say that Officer Gilchrist's conduct, in issuing the citations after his encounter with Plaintiff, deprived Plaintiff of a liberty interest in a manner that shocked the conscience. *See, e.g.*, *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (explaining that "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience'").

Where the allegations in the Complaint, taken as true, reveal a deficiency in a plaintiff's claim, the Court may dismiss claims *sua sponte* under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Bintliff-Ritchie v. Arn. Reinsurance Co.*, No. 07-1527, 285 F. App'x 940, 943 (3d Cir.

18

2008); *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).  Because Plaintiff did

not specify these claims in the Second Amended Complaint and did not respond to Defendants'

arguments attacking these purported claims, the Court cannot assess the merits of these claims.

Consequently, the Court will dismiss these claims.

### 3.  Officer Gilchrist's Immunities Under § 1983[3]

Assuming *arguendo* that Plaintiff has established a triable fact of a constitutional

---

[3]The Court notes that Defendants failed to raise these immunity defenses in their answer, an omission that typically results in waiver.  *See, e.g.*, *Systems, Inc. v. Bridge Elec. Co.*, 335 F.2d 465, 466 (3d Cir. 1964) ("An affirmative defense which is neither pleaded as required by Rule 8(c) nor made the subject of an appropriate motion under Rule 12(b) is waived.").  "Courts in this Circuit, however, have taken a more forgiving approach to parties who fail to raise affirmative defenses in an answer, as courts have held that the failure to raise an affirmative defense by responsive pleading or appropriate motion does not always result in waiver."  *Sultan v. Lincoln Nat'l Corp.*, Civ. No. 03-5190, 2006 WL 1806463, at *13 (D.N.J. June 30, 2006) (citing *Prinz v. Great Bay Casino Corp.*, 705 F.2d 692 (3d Cir.1983)).  Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend the pleadings] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Third Circuit has recognized that a "defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"  *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) (citations omitted).  Courts in this Circuit have extended these principles to immunity defenses raised for the first time by a motion for summary judgment.  *E.g.*, *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 210 (3d Cir. 2001); *cf. Ali v. Person*, 904 F. Supp. 375, 377–78 (D.N.J. 1995) (dismissing § 1983 perjury claim against police officer on grounds of the officer's testimonial absolute immunity, despite the fact that the officer had not raised that defense).  In *Eddy*, the court instructed courts to consider "whether the defendants violated any scheduling orders in raising the defense for the first time in their summary judgment motions, whether they delayed asserting the defense for tactical purposes or any improper reason, and, most important, whether the delay prejudiced the plaintiff's case."  *Eddy*, 256 F.3d at 210.

Here, the Court notes that Defendants first raised the qualified immunity defense in the initial motion for summary judgment filed more than a year ago on September 22, 2009, (Doc. No. 16, Brief at 25), and Defendants renewed this argument in the opening brief for their renewed motion for summary judgment.  Plaintiff has had two opportunities to respond to this defense and has failed to do so, and Plaintiff does not suggest that consideration of this defense would cause him prejudice.  The Court finds that Defendants raised their immunity defense at a pragmatically sufficient time, and the Court finds that the resolution of these purely legal issues will not unfairly prejudice Plaintiff.

violation, Defendants argue that Officer Gilchrist is shielded by qualified immunity.  Qualified

immunity shields state officials from liability "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Generally speaking, "[t]he inquiry into the

applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the

deprivation of a constitutional right, and (2) whether that right was established at the time of the

alleged deprivation." *Dancy v. Collier*, 266 F. App'x 102, 104 (3d Cir. 2008) (citing *Saucier v.

Katz*, 533 U.S. 194, 201 (2001)). Where a police officer's official conduct is the subject of the

alleged constitutional violation, the officer will be entitled to qualified immunity if he establishes

"either that he or she acted with probable cause, or, even if probable cause did not exist, that a

reasonable police officer could have believed in its existence." *Kirk v. City of Newark*,

109 N.J. 173, 184 (1988); *see also Wagner v. Riverside Twp.*, Civ. No. 04-839, 2007 WL

4226069, at *7 (D.N.J. Nov. 26, 2007).

　　　As the Court explained in Part II(A)(1)(a) (discussing Plaintiff's malicious use of process

claim), *supra*, viewing the facts in the light most favorable to Plaintiff, the Court is persuaded

that a reasonable officer in Officer Gilchrist's position would have believed that probable cause

existed to issue the traffic summonses.  It is undisputed that, while Officer Gilchrist was

directing traffic in front of the school, though in a manner that Plaintiff believed to be

insufficient, Plaintiff twice honked his horn at the officer, and subsequently made a

condescending remark as he drove by the officer.  The municipal court judge who reviewed the

matter in the first instance concluded that, under the circumstances, Plaintiff's use of the horn

violated N.J. Stat. Ann. § 39:3-69.  As noted above, this finding is not patently unreasonable, and

although the Superior Court reversed this finding and found Plaintiff not guilty, it did not dismiss

the charges outright.  Nor does Officer Gilchrist's testimony before the municipal court

demonstrate the absence of probable cause.  For the reasons stated in Part II(A)(1)(a), the mere

fact that the Superior Court disagreed with the municipal court concerning whether Plaintiff's

conduct violated the traffic regulation does not demonstrate that a reasonable officer would not

have had probable cause to issue the summonses.  Because a reasonable officer in Defendant's

position would have reason to believe that probable cause existed to issue the traffic citations,

this Court finds that Officer Gilchrist is entitled to qualified immunity for these official actions.

Furthermore, to the extent Plaintiff bases his § 1983 claim on the assertion that Officer

Gilchrist gave false testimony during the municipal court trial, such testimony is entitled to

absolute immunity.  The Supreme Court in *Briscoe v. LaHue* held that trial witnesses are

absolutely immune from civil liability under § 1983.  460 U.S. at 345–46; *see also Peterson v.*

*Bernardi*, 719 F. Supp. 2d 419, 430 (D.N.J. 2010) (applying *Briscoe* absolute  immunity to a

§ 1983 claim that state police's forensic expert gave false testimony at the plaintiff's criminal

trial); *Ali v. Person*, 904 F. Supp. 375, 377–78 (D.N.J. 1995) (finding that *Briscoe* absolute

immunity barred § 1983 claim premised on the assertion that a police officer gave false

testimony during grand jury proceedings).  This testimonial immunity "applies equally to the

testimony of 'ordinary citizens' and law enforcement officials," and "the Supreme Court adopted

the immunity mindful that it would shield even witnesses who give knowingly false testimony to

unjustly convict an innocent criminal defendant."  *Peterson*, 719 F. Supp. 2d at 430 (citing

*Briscoe*, 460 U.S. at 342 n.27, 345).

Because qualified and absolute immunity attach to Officer Gilchrist's issuance of the

summons and his testimony before the municipal court, this Court will grant Defendant's motion for summary judgment on Plaintiff's § 1983 claim.

### 4. Municipal Liability Under § 1983

Defendants also argue, and Plaintiff does not object, that all § 1983 claims against the Township of Springfield and the Springfield Township Police Department must be dismissed for failure to show a policy and custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court agrees. *Monell* held that "Congress did not intend municipalities to be held liable unless actions pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. In other words, *Monell* held that a municipality would not be held liable under § 1983 "solely because it employs a tort feasor." *Id.* Clarifying this doctrine, the Third Circuit has held that "municipal liability for failure to train cannot be predicated solely on a showing that the City's employees could have been better trained." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029–30 (3d Cir. 1991). Rather, in order to establish a claim for failure to train, "[a] plaintiff must (1) identify specific training not provided that could reasonably be expected to prevent the [constitutional violation], and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to [the constitutional violations alleged]." *Id.* at 1030.

Although the Second Amended Complaint conclusorily alleges that the Township utilized insufficient and improper hiring, supervisory, disciplinary, and training practices with its police personnel, Plaintiff has failed to allege sufficient facts to state a plausible claim for municipal liability on these bases. Plaintiff neither identifies specific training and/or disciplinary policies

that could have been implemented, nor demonstrates that the Township's failure to implement

such policies reflects deliberate indifference to constitutional violations.  Because Plaintiff has

not alleged, much less substantiated, a plausible claim that a Township policy or custom caused a

deprivation of his constitutional rights, municipal liability cannot lie under § 1983, and the Court

must dismiss the Township from this action.  This conclusion also compels the dismissal of the

Springfield Police Department, because a police department is not treated as a separate and

distinct entity from the municipality under § 1983.  *See, e.g.*, *Bonenberger v. Plymouth Twp.*, 132

F.3d 20, 25 n. 4 (3d Cir.1997).

### C.  42 U.S.C. § 1981(a), (c)

Although Plaintiff's Complaint invokes 42 U.S.C. § 1981(a) and (c) in passing, he does

not explain how this statute relates to his claims.  This statute provides in pertinent part:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the
> same right in every State and Territory to make and enforce contracts, to
> sue, be parties, give evidence, and to the full and equal benefit of all laws
> and proceedings for the security of persons and property as is enjoyed by
> white citizens, and shall be subject to like punishment, pains, penalties,
> taxes, licenses, and exactions of every kind, and to no other.
>
> . . .
>
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by
> nongovernmental discrimination and impairment under color of State
> law.

In order to sustain a claim under § 1981, "a plaintiff must show (1) that he belongs to a

racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3)

discrimination concerning one or more of the activities enumerated in' § 1981, including the

23

right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).  The Supreme Court in *Jett v. Dallas Independent School District* held that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.  Thus to prevail on [a § 1981 damages claim], petitioner must show that the violation of his [his § 1981 rights] was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett*, 491 U.S. 701, 735–36 (1989).

Here, despite having had two opportunities to amend his Complaint and having had access to discovery, Plaintiff still has not alleged that he is the member of a protected class for purposes of § 1981, or that because of membership in any particular, protected class, he has been discriminated against within the terms of § 1981.  Furthermore, as noted above, Plaintiff has not identified an official policy or custom that caused a constitutional violation, which would be necessary for municipal liability to attach under § 1983.  The Court has no basis by which to assess the merits of these purported claims.  Thus, the Court will *sua sponte* dismiss these claims.

### D.  New Jersey Constitution & New Jersey Civil Rights Act

Defendants argue that "Plaintiff has not included in his complaint any specific allegations as to what constitutional rights under the state constitution have been violated as a result of the actions of the defendants."  (Defs.' Br. at 29.)  The Court agrees and concludes that no claim has been stated with respect to these provisions of state law.  Accordingly, the Court will *sua sponte*

dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  However, to the extent that Plaintiff seeks to bring his malicious use of process and malicious abuse of process claims under state law, the Court's conclusion on these claims under federal law in Part II(A)(1) apply with equal force, because the state law standards for these claims, as applied to this case, do not result in a contrary conclusion.

### E.  Dismissal with Prejudice

The Court notes that Plaintiff has had two opportunities to amend his Complaint and ample access to discovery, yet Plaintiff still has not stated plausible claims for his unspecified constitutional, § 1981, state law, and John Doe claims.  Nor does Plaintiff request an additional opportunity to amend his pleadings with regard to these claims.  Courts generally will relax pleading requirements for *pro se* litigants, but Plaintiff is an attorney, and he has provided no explanation for these shortcomings.  The Court is satisfied that Plaintiff has had a full and fair opportunity to litigate his claims, and that further amendment would be futile.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, the Court will dismiss these claims with prejudice.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.  (Doc. No. 31.)  An appropriate form of order accompanies this Memorandum Opinion.


Dated: January 31, 2011

                                    _____/s/ Garrett E. Brown, Jr._____
                                    GARRETT E. BROWN, JR., U.S.D.J.